

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 23, 2017**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| COLORADO 2002B LIMITED | § | |
| PARTNERSHIP and COLORADO 2002C | § | Case No. 16-33743-BJH-11 |
| LIMITED PARTNERSHIP, | § | |
| | § | |
| Debtors. | § | Jointly Administered |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING JOINT CHAPTER 11 PLAN

Upon the *Debtors' Joint Chapter 11 Plan* dated March 31, 2017 [Docket No. 103], as it

may be amended or supplemented from time to time (the "Plan");[1] and this court (the "Court")

having entered, after due notice and a hearing, an order dated March 31, 2017, (i) approving the

Disclosure Statement for the Plan (the "Disclosure Statement"); (ii) approving the procedures to

solicit acceptances of the Plan, and (iii) scheduling a hearing and establishing notice and

objection procedures for confirmation of the Plan (the "Solicitation Order") respectively, Docket

No. 102; and the Disclosure Statement and Plan having been distributed or made available to

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

holders of Claims against and Equity Interests in the Debtors and other parties in interest as provided in the Solicitation Order; and upon the hearing to consider confirmation of the Plan conducted on May 17, 2017 (the "Confirmation Hearing"); and good and sufficient notice of the Plan and the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in the Debtors in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the orders of this Court, as established by the affidavits of service and mailing filed with the Court (the "Notice Affidavits"),[2] and such notice being sufficient under the circumstances and no other or further notice being required; and after full consideration of (i) the declaration filed by the Debtors' Responsible Party, Karen Nicolaou, dated May 12, 2017, in support of confirmation [Docket No. 120] (the "Nicolaou Declaration") and (ii) the declaration filed by the Debtors' Court-appointed voting and solicitation agent, BMC Group, Inc. ("BMC"), dated May 10, 2017, regarding the methodology applied to the tabulation of the voting results with respect to Plan [Docket No. 118] (the "BMC Declaration"); and no objections to confirmation of the Plan having been filed, and upon the entire record of these Chapter 11 Cases, the record made at the Confirmation Hearing and the arguments of counsel and all of the evidence adduced thereat; and the Court having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.     Findings and Conclusions.  The findings and conclusions set forth herein and in the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

---

[2] *See* Docket No. 107 (Certificate of Service for mailing of solicitation packages) and 117 (Certificate of Service for supplemental notice of hearing).

pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

B. _Jurisdiction, Venue, Core Proceeding_. This Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## CHAPTER 11 CASES

C. _Commencement of the Chapter 11 Cases_. On September 24, 2016 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By order dated October 14, 2016, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered. The Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

D. _Judicial Notice_. The Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and pleadings reflected therein including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

## SOLICITATION AND NOTICE

E.     Solicitation and Notice.     On March 31, 2017, the Court entered its Solicitation Order, which (i) approved the Disclosure Statement and found that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code; (ii) established procedures for the solicitation of votes on the Plan; and (iii) scheduled a hearing and established notice and objection procedures for confirmation of the Plan.  Docket No. 102.  The following materials (collectively, the "Solicitation Materials") were served upon parties in interest in compliance and in accordance with the Bankruptcy Rules, the Solicitation Order, as applicable:

- the Plan;

- the Disclosure Statement;

- the Solicitation Order;

- the Ballots (as defined in the Solicitation Order); and

- the Confirmation Hearing Notice (as defined in the Solicitation Order).

As described in the BMC Declaration and the Notice Affidavits (a) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these Chapter 11 Cases and (b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Order was timely provided in compliance with the Bankruptcy Rules and the Solicitation Order.

F.     Voting.     Votes on the Plan were solicited after disclosure to holders of Claims against and Equity Interests in the Debtors of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the BMC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent

with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

## COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

G.    Burden of Proof.    The Debtors have met their burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

H.    Bankruptcy Rule 3016(a).    The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

I.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article III of the Plan designates eight (8) Classes of Claims against and Equity Interests in the Debtors.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Equity Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and V of the Plan specify that Classes 1A, 1B, 2A, 2B, 3A and 3B are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and V of the Plan specify that Classes 4A and 4B are impaired and Article IV of the Plan sets forth the treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)     No Discrimination (11 U.S.C. § 1123(a)(4)).  Article IV of the Plan provides for the same treatment under the Plan for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment in respect of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides for adequate and proper means for its implementation including, without limitation, (a) consummation of the managing general partner settlement (the "Managing General Partner Settlement") contained in Article VI of the Plan, (b) the cancellation of all Equity Interests in the Debtors and their ultimate dissolution, (c) the cancellation of certain existing agreements, obligations, instruments, and interests; (d) the vesting of the assets of the Debtors' estates in the Post-Confirmation Debtors; and (e) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)  Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  Because the Debtors are liquidating, the prohibition on the issuance of nonvoting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code, is not applicable.

(vii)  Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Responsible Party will continue in her capacity as such following confirmation of the Plan, until the Chapter 11 Cases are wound down and concluded.  The Responsible Party's continuance in such role is consistent with the interests of creditors and equity holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

J.  Additional Plan Provisions (11 U.S.C. § 1123(b)).  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i)  Impairment/Unimpairment of Any Class of Claims or Interests (§ 1123(b)(1)).  Pursuant to the Plan, Classes 1A, 1B, 2A, 2B, 3A and 3B are unimpaired and Classes 4A and 4B are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(ii)  Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  Article IX of the Plan provides for the rejection of the Debtors' remaining executory contracts and unexpired leases (if any), effective as of the Effective Date, except for any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned or rejected pursuant to an Order of the Bankruptcy Court entered on or before the Confirmation Date, (b) previously expired or terminated by its own terms or (c) is the subject of a motion to assume, assume and assign or reject filed on or prior to the Confirmation Date.

(iii)  Other Appropriate Provisions (11 U.S.C. § 1123(b)(2)).  The Plan's other provisions are appropriate and consistent with the applicable provisions of the

Bankruptcy Code including, without limitation, provisions for (a) distributions to holders of Claims and Equity Interests, (b) retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (c) resolution of Disputed Claims, (d) allowance of certain Claims, (e) releases by Debtors of certain parties, (f) releases by holders of Claims and Equity Interests, and (f) exculpations of certain parties.

(iv) Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).  This Plan provides for settlement of all Claims and Causes of Action through the Managing General Partner Settlement.  As set forth below, the Managing General Partner Settlement is fair and equitable and will be approved.

(v) Adequate Means for Implementation (11 U.S.C. § 1123(b)(5)).  The Plan provides adequate means for its implementation including (i) leaving unaffected the rights of holders of Claims in Classes 1A, 1B, 2A, 2B, 3A and 3B, and (ii) affecting the rights of holders of Equity Interests in Classes 4A and 4B.

K. Cure of Defaults (11 U.S.C. § 1123(d)).  The Plan does not contemplate the cure of any defaults.  Thus, section 1123(d) of the Bankruptcy Code is not applicable.

L. The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

 (a) Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

 (b) The Debtors have complied with all provisions of the Bankruptcy Code and Bankruptcy Rules, except as otherwise provided or permitted by orders of this Court; and

       (c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

M.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and the other proceedings in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a liquidation of the Debtors.  The Plan was negotiated at arm's-length among representatives of the Debtors and PDC.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions, as well as the provisions related to the Managing General Partner Settlement, have been negotiated in good faith and at arm's-length.  Such provisions are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, are each necessary for the success of the Plan, and were not included in the Plan for any improper purpose.

N.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  It has been disclosed in the Plan

and in the Disclosure Statement that the Responsible Party will continue in that capacity after confirmation of the Plan, and the continuance in such office by the Responsible Party is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. No insiders will be employed or retained by the Post-Confirmation Debtors.

P.     No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Debtors.

Q.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Debtors are liquidating, and the estates will be enhanced as a result of the Managing General Partner Settlement, thereby maximizing distributions to holders of Equity Interests. If the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, the Managing General Partner Settlement would not necessarily be enforceable, additional costs and expenses would be incurred by a chapter 7 trustee, and litigation would likely ensue with unknown and questionable results. Each holder of an Equity Interest in Classes 4A and 4B has either accepted the Plan, or will receive or retain under the Plan on account of its Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies the "best interest of creditors" test with respect to each of Classes 4A through 4B under section 1129(a)(7) of the Bankruptcy Code.

R.     Acceptance by/Unimpairment of Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1A, 1B, 2A, 2B, 3A and 3B are unimpaired by the Plan and holders of Claims in such Classes are thus conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 4A and 4B are impaired by the Plan, and each such Class has

accepted the Plan in accordance with section 1126(d) of the Bankruptcy Code, as established by the BMC Declaration. Section 1129(a)(8) of the Bankruptcy Code has, therefore, been satisfied.

S.      Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

T.      Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). No Class of Claims is impaired under the Plan. Section 1129(a)(10) is, therefore, inapplicable.

U.      Feasibility (11 U.S.C. § 1129(a)(11)). The Debtors are liquidating, pursuant to the Plan. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

V.      Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Court, have been or will be paid by the Debtors on the Effective Date pursuant to section 13.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors do not pay any "retiree benefits," as defined in section 1114 of the Bankruptcy Code and section 1129(a)(13) of the Bankruptcy Code is thus inapplicable in these Chapter 11 Cases.

X.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Y. <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtors are not non-profit corporations or trusts. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan subject to confirmation. Section 1129(c) of the Bankruptcy Code has been satisfied.

BB. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

CC. <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>. These Chapter 11 Cases are not small business cases and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

## COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE

DD. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in these Chapter 11 Cases, the Debtors and the Responsible Party, and each of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys, agents, successors and assigns, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter

11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan and the Managing General Partner Settlement and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## COMPLIANCE WITH SECTION 1126 OF THE BANKRUPTCY CODE

EE.     Acceptance of Plan (11 U.S.C. § 1126).     As set forth in the BMC Declaration, each impaired voting Class has voted to accept the Plan, in accordance with the requirements of section 1126 of the Bankruptcy Code.

## PLAN IMPLEMENTATION

FF.     The terms of the Plan are incorporated by reference and are, except as addressed herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

GG.     The Plan and the Managing General Partner Settlement have been negotiated in good faith and at arm's-length and shall, on and after the Effective Date, constitute legal, valid, binding and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

HH.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Debtors, PDC, the Responsible Party, and all of their respective members, managers, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, funds, agents and representatives will be acting in good faith if they proceed to (i) consummate

the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

II.     Managing General Partner Settlement.    The Managing General Partner Settlement among the Debtors and PDC is necessary to, and is an integral and essential element of, the Plan and its consummation.  The terms and conditions of the Managing General Partner Settlement are fair and reasonable under the circumstances.  The performance by the Debtors or Post-Confirmation Debtors, as the case may be, and PDC of the terms thereof is authorized, and the parties are directed to consummate the same.  The Managing General Partner Settlement is the product of arm's-length negotiations between the Debtors and PDC, and has been proposed in good faith, for legitimate business purposes, is supported by reasonably equivalent value and fair consideration and reflects the Debtors' exercise of reasonable business judgment.  Entry into the Managing General Partner Settlement and consummation of the same is in the best interests of the Debtors, their estates, their creditors and their equity holders.  The Debtors have provided all interested parties with sufficient and adequate notice of, and an opportunity to be heard with respect to, the Managing General Partner Settlement.  The terms and provisions of the Managing General Partner Settlement are approved pursuant to this Confirmation Order.

JJ.     Exemption from Transfer Taxes.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments

executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

KK.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to Article IX of the Plan.  Each assumption or rejection of an executory contract or unexpired lease as provided in section 9.1 of the Plan shall be legal, valid, and binding upon the applicable Post-Confirmation Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

## EXCULPATIONS, INJUNCTIONS AND RELEASES

LL.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, injunctions, stays and releases set forth in section 11.2, 11.3, 11.4 and 11.5 of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the unopposed releases and injunctions set forth in sections 11.2, 11.3, 11.4 and 11.5 of the Plan if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the Managing General Partner Settlement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable,

reasonable, and in the best interests of the Debtors, the Post-Confirmation Debtors and their estates, creditors and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and Equity Interests and are necessary to the proposed reorganization. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunctions provided for in sections 11.2, 11.3, 11.4 and 11.5 of the Plan, as modified herein. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in Article XI of the Plan, as modified herein, are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, exculpation and releases would seriously impair the Debtors' ability to confirm the Plan and reorganize. Further, the Ballot provided to holders of Equity Interests entitled to vote on the Plan provided such holders with an opportunity to "opt out" of the release contained in section 11.4 of the Plan. To the extent any holder of an Equity Interest properly and correctly opted out of such release, such holder is deemed to have ***not*** provided the releases contained in section 11.4 of the Plan, and such holder shall retain its rights, claims and causes of action (if any); *provided however*, that the portion of the Direct Claim Settlement Payments otherwise distributable to any holder of an Equity Interest who properly and correctly opted out of the releases contained in section 11.4 of the Plan shall be reallocated Pro Rata to the other holders of Equity Interests in the applicable Debtor who have not opted out of the third party release.[3]

---

[3] As set forth in the BMC Declaration and in the record at the Confirmation Hearing, no Equity Interest holders opted out of the third party releases.

**OTHER FINDINGS**

MM. <u>Conditions Precedent to Confirmation</u>. The conditions precedent to confirmation set forth in section 10.1 of the Plan have been satisfied.

NN. <u>Retention of Jurisdiction</u>. This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

OO. <u>Objections</u>. All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections. No objections to confirmation were filed or otherwise raised.

**THE PLAN SATISFIES CONFIRMATION REQUIREMENTS**

PP. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Confirmation</u>. The Plan shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code. A full and correct copy of the Plan confirmed by this Confirmation Order (including any modifications thereto made on the record at the Confirmation Hearing) is attached hereto as <u>Exhibit "A"</u>.

2. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with the terms of the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Objections</u>. No objections to confirmation were filed or otherwise raised.

4. <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Equity Interest in the Debtors and such holder's respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

5. <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots submitted in connection with voting on the Plan: (a) were solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors for any purpose other than voting on the Plan.

6. <u>Distribution Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VII of the Plan.

7. <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. As set forth in section 11.1 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the applicable Post-Confirmation Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or this Confirmation Order. The vesting, on the Effective Date, of the property of the Debtors' estates in the Post-Confirmation Debtors does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

8. <u>Dissolution of the Debtors</u>.  Upon the distribution and disposition of all assets of the Debtors' Estates pursuant to the Plan, and the filing by or on behalf of the Debtors of a certification to that effect with the Bankruptcy Court, the Debtors shall be deemed dissolved for all purposes, without the necessity for any further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; *provided, however,* that the Responsible Party shall file with the appropriate state authority(ies) a certificate of dissolution, if necessary.

9. <u>Releases of Liens</u>.  Except as otherwise provided in the Plan or this Confirmation Order, upon the Effective Date, any Lien, mortgage, deed of trust and other security interest against the property of any Debtor shall be deemed cancelled, terminated, released, discharged and extinguished and all right, title, and interest of any holder of such Lien, mortgage, deed of trust, financing statement and other security interest, including any rights to any collateral thereunder, shall revert to the applicable Post-Confirmation Debtor and its successors and assigns.  The Debtors, the Post-Confirmation Debtors or their designees are authorized to make such filings or releases as necessary to effectuate the provisions of this paragraph.

10. <u>Retained Assets</u>.  To the extent that the succession to assets of the Debtors by the Post-Confirmation Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to the Post-Confirmation Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Post-Confirmation Debtors with good title to such property, free and clear of all Liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable

nonbankruptcy law, and (d) do not and shall not subject the Post-Confirmation Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, by laws affecting successor or transferee liability.

11. <u>Notice of Confirmation Date and Effective Date</u>.

(a) <u>Notice of Entry of Confirmation Order</u>. Within five (5) Business Days after the Confirmation Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of (i) the entry of this Confirmation Order and (ii) the last date to file (A) requests for payment of Administrative Expense Claims pursuant to section 2.1 of the Plan and Fee Claims pursuant to section 2.2 of the Plan, and (B) Claims arising from the rejection of any executory contracts and unexpired leases pursuant to section 9.1 of the Plan.

(b) <u>Notice of Effective Date</u>. Within five (5) Business Days after the Effective Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of the occurrence of the Effective Date. The Debtors may serve such notice simultaneously with the Initial Distribution under the Plan.

12. <u>Administrative Expense Claims</u>.

(a) <u>Filing</u>. All holders of Administrative Expense Claims arising from the Petition Date through the Effective Date, other than Professional Persons holding Fee Claims, shall file with the Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request shall be served on the Debtors and their counsel and shall, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim, (ii) the amount of the Administrative Expense Claim, and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion shall result in the discharge

of such Administrative Expense Claim and its holder shall be forever barred from asserting such Administrative Expense Claim against the Debtors.

(b) <u>Allowance</u>. An Administrative Expense Claim for which a request for payment has been timely filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of this Court.

(c) <u>Payment</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim requests a different treatment of such Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or (ii) fourteen (14) days after entry of a Court order allowing such Administrative Expense Claim.

13. <u>Fee Claims</u>. Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Court's calendar permits, after consultation with counsel to the Debtors. Allowed Fee Claims shall be paid in full

in Cash by the Debtors on the later of (A) the Effective Date or (B) fourteen (14) days after entry of a Court order allowing such Fee Claim.

14.     <u>Record Date for Distributions</u>.  The Distribution Record Date shall be May 17, 2017.  The Post-Confirmation Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any Equity Interest or indebtedness after the Distribution Record Date and shall be entitled instead to recognize for all purposes under the Plan and this Confirmation Order, including to effect distributions under the Plan, only those record holders stated on the transfer ledgers or registers maintained by the Debtors and PDC as of the close of business on the Distribution Record Date.

15.     <u>Unclaimed Distributions</u>.  If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors or PDC are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred twenty (120) days after the date of the distribution in question.  After such 120th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the respective Debtor from which it came and thereafter be distributed Pro Rata to the holders of that Debtor's Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan, and (ii) the Claim or Equity Interest of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

16.     <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)     <u>General</u>.  Pursuant to section 9.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each Debtor is hereby deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor pursuant to an order of the Court, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation.  This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption or rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date.  Such assumption or rejection shall be legal, valid, and binding upon the applicable Post-Confirmation Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

(b)     <u>Bar Date for Rejection Damage Claims</u>.  All Claims arising out of the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served upon the applicable Debtor and its counsel no later than thirty (30) days after the earlier of (i) the date of entry of a Court order (including this Confirmation Order) approving such rejection or (ii) the Effective Date; *provided, however*, that any Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date of the Plan shall be served on the Post-Confirmation Debtors.  Any rejection Claims not filed within such time shall be forever barred from assertion against the Debtors, the Post-

Confirmation Debtors, their Estates and their property, shall be unenforceable and shall be discharged.

17. <u>General Authorization</u>. Pursuant to sections 1142(a) and (b) of the Bankruptcy Code and any applicable provision of the business corporation laws of any other State, each of the Debtors and the Post-Confirmation Debtors is hereby authorized and empowered to, and shall, take such actions and perform such other acts as may be reasonably necessary or appropriate to comply with or implement the Plan. All matters provided for in the Plan involving the structure of the Debtors or the Post-Confirmation Debtors, and any action required by the Debtors or the Post-Confirmation Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any person or entity.

18. <u>Managing General Partner Settlement</u>. The Managing General Partner Settlement is hereby approved. The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby. Pursuant to sections 105 and 363 of the Bankruptcy Code, on the Effective Date, the transfer of the Purchased Assets from the Debtor to PDC pursuant to the Managing General Partner Settlement shall be free and clear of all liens, claims and interests to fullest extent allowable under applicable law. PDC has entered into the transactions contemplated by the Managing General Partner Settlement in good faith, and is a good faith purchaser of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the transfer of the Purchased Assets shall not effect the validity of the sale or the transfer of the Purchased Assets to PDC free and clear of all liens, claims and interests, unless such authorization is duly stayed before closing

of such transfer pending any appeal. PDC is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code, and PDC proceeded in good faith in all respects in connection with the sale of the Purchased Asses and these chapter 11 cases generally.

19.     **Payment of Statutory Fees.** Each of the Debtors and the Post-Confirmation Debtors, as applicable, shall pay any and all fees pursuant to 28 U.S.C. § 1930(a)(6) until the Chapter 11 Cases are converted, dismissed or closed. The Debtors and the Post-Confirmation Debtors, as applicable, shall also make any and all reports pursuant to Bankruptcy Rule 2015(a) as may be required by the U.S. Trustee.

20.     **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, including, but not limited to, the transfer of the Purchased Assets to PDC.

21.     **Filing and Recording.** This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and

all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan Documents and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of the Purchased Assets to PDC.

22.     Exemption from Transfer Taxes.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtors and approved by the Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

23.     Exculpation, Releases and Injunctions.     The exculpations, releases and injunctions contained in sections 11.2, 11.3, 11.4 and 11.5 of the Plan are hereby approved;

*provided, however*, that notwithstanding anything contained herein or in the Plan, neither the Disbursing Agent nor PDC shall be exculpated parties under section 11.2 of the Plan.

24. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Article X of the Plan have been satisfied or waived pursuant to section 10.2 and 10.3 of the Plan.

25. <u>Retention of Jurisdiction</u>. Upon the Effective Date, the Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

26. <u>Appeal of the Confirmation Order</u>. Except as otherwise provided herein, if any provision of this Confirmation Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Disbursing Agent prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto, and shall remain binding.

27. <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan

and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency among the Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Confirmation Order, the Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

28. <u>Authorization to Consummate Plan/No Stay</u>. Notwithstanding Bankruptcy Rule 3020(e), 6004(g), 6006(d), 7062 or otherwise, but subject to Article X of the Plan, the Debtors are authorized to consummate the Plan upon entry of this Confirmation Order, and the Confirmation Order shall take effect on the date hereof.

# # # END OF ORDER # # #

## EXHIBIT A

**Joint Chapter 11 Plan As Confirmed**

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| COLORADO 2002B LIMITED | § | |
| PARTNERSHIP and COLORADO 2002C | § | Case No. 16-33743-BJH-11 |
| LIMITED PARTNERSHIP, | § | |
| | § | |
| Debtors. | § | Jointly Administered |

## <u>DEBTORS' JOINT CHAPTER 11 PLAN</u>

**GRAY REED & MCGRAW LLP**

Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Jason M. Brown
Texas Bar No. 24087220
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

**ATTORNEYS FOR THE DEBTORS**

Dated:  March 31, 2017

## <u>TABLE OF CONTENTS</u>

ARTICLE I DEFINITIONS AND INTERPRETATION ..................................................1

    1.1    Definitions. ...........................................................................................1

    1.2    Rules of Interpretation and Construction. ...........................................6

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS..........................................7

    2.1    Administrative Expense Claims. .........................................................7

    2.2    Fee Claims. ...........................................................................................7

    2.3    Priority Tax Claims. .............................................................................8

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...............8

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS.......................9

    4.1    Class 1 – Priority Non-Tax Claims. ....................................................9

    4.2    Classes 2A and 2B – Secured Claims...................................................9

    4.3    Class 3 – General Unsecured Claims. ..................................................9

    4.4    Classes 4A and 4B – Equity Interests..................................................9

ARTICLE V IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE CLASSES .........................................10

    5.1    Classes Entitled to Vote.....................................................................10

    5.2    Class Acceptance Requirement. .........................................................10

    5.3    Cramdown. ..........................................................................................10

ARTICLE VI MEANS OF IMPLEMENTATION ........................................................10

    6.1    General. ...............................................................................................10

    6.2    Managing General Partner Claims Settlement. ..................................11

    6.3    Release of Liens. .................................................................................12

    6.4    Cancellation of Limited Partnership Agreements and Equity Interests. ...12

    6.5    Partnership Actions. ...........................................................................13

ARTICLE VII DISTRIBUTIONS .................................................................................13

    7.1    Date of Distributions. .........................................................................13

    7.2    Sources of Cash for Plan Distributions. .............................................14

    7.3    Disbursing Agent.................................................................................14

    7.4    Rights and Powers of Disbursing Agent. ...........................................14

    7.5    Record Date for Distributions. ...........................................................14

ii

7.6     Recipients of Distributions. .......................................................... 14

7.7     Delivery of Distributions. ............................................................. 15

7.8     Means of Payment. ....................................................................... 15

7.9     Setoffs and Recoupment. .............................................................. 15

7.10    Disputed Claims Reserve and Administrative Reserve. ............... 15

7.11    Distributions After Effective Date. ............................................. 15

7.12    Withholding and Reporting Requirements. .................................. 16

7.13    No Postpetition Interest. .............................................................. 16

7.14    Time Bar to Payments. ................................................................. 16

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS ................................................................................................................ 16

8.1     Objections to Claims. .................................................................. 16

8.2     No Distributions Pending Allowance. ......................................... 17

8.3     Distributions After Allowance. ................................................... 17

8.4     Proof of Equity Interest. .............................................................. 17

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................................ 17

9.1     Rejection of Contracts and Leases. ............................................. 17

9.2     Inclusiveness. ............................................................................... 17

9.3     Claims Based on Rejection of Executory Contracts or Unexpired Leases. 18

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN ..................................................................... 18

10.1    Conditions to Confirmation of Plan. ........................................... 18

10.2    Conditions to Effective Date of Plan. ......................................... 18

10.3    Waiver of Conditions Precedent. ................................................. 18

10.4    Effect of Failure of Conditions. .................................................. 19

10.5    Reservation of Rights. ................................................................. 19

ARTICLE XI EFFECTS OF CONSUMMATION ............................................... 19

11.1    Revesting of Assets. .................................................................... 19

11.2    Exculpation. ................................................................................. 19

11.3    Releases by the Debtors. .............................................................. 20

11.4    Third Party Release. .................................................................... 20

iii

11.5    Injunction and Stay. ........................................................................21

11.6    Preservation of Claims. ..................................................................21

11.7    Compromise of Controversies. .......................................................21

ARTICLE XII RETENTION OF JURISDICTION .........................................................22

ARTICLE XIII MISCELLANEOUS ...............................................................................23

13.1    Payment of Statutory Fees. .............................................................23

13.2    Filing of Additional Documents. ....................................................23

13.3    Schedules, Exhibits and Plan Supplement Incorporated. ...........23

13.4    Amendment or Modification of the Plan. .......................................23

13.5    Inconsistency. .................................................................................24

13.6    Exemption from Certain Transfer Taxes. .......................................24

13.7    Expedited Tax Determination. ........................................................24

13.8    Ordinary Course. ............................................................................24

13.9    Binding Effect. ...............................................................................25

13.10   Severability. ....................................................................................25

13.11   No Admissions. ...............................................................................25

13.12   No Payment of Attorneys' Fees. .....................................................25

13.13   Notices. ...........................................................................................25

13.14   Governing Law. ..............................................................................26

iv

Colorado 2002B Limited Partnership and Colorado 2002C Limited Partnership hereby propose the following Joint Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**1.1** *Definitions.*

For the purpose of the Plan, the following terms shall have the respective meanings set forth below:

*2002B* means Colorado 2002B Limited Partnership.

*2002C* means Colorado 2002C Limited Partnership.

*2002B Direct Claim Settlement Payment* means $1,100,000.00 in Cash, to be paid by PDC to the 2002B Estate for distribution to holders of Equity Interests in 2002B, other than PDC, pursuant to the terms of the Plan.

*2002C Direct Claim Settlement Payment* means $400,000.00 in Cash, to be paid by PDC to the 2002C Estate for distribution to holders of Equity Interests in 2002C, other than PDC, pursuant to the terms of the Plan.

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code including, without limitation (a) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930, (b) Fee Claims and (c) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

*Administrative Reserve* means the Cash reserve to be established pursuant to section 7.10 of the Plan, in the amount of $350,000.00, which shall be used to pay (i) Allowed Administrative Expense Claims, and (ii) the costs and expenses of administering the Chapter 11 Cases from the Effective Date until the time the Chapter 11 Cases are closed, up to $25,000. Such post-Effective Date costs and expenses covered by the Administrative Reserve shall expressly include any fees payable under 28 U.S.C. § 1930.

*Allowed* means, with reference to any Claim or Equity Interest, any Claim or Equity Interest (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtors' Schedules and is not listed as contingent, liquidated or disputed, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which expressly allowed under the Plan.

1

**Ballot** means the ballot provided to holders of Equity Interests to (i) indicate their votes to accept or reject the Plan and (ii) opt out of the third party release in section 11.4 of the Plan.

**Bankruptcy Code** means title 11 of the United States Code, as amended from time to time.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Cases.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

**Bar Date** means the last date to file proofs of claim against the Debtors, which is January 25, 2017 for all creditors except Governmental Units, and March 23, 2017 for Governmental Units.

**Business Day** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**Cash** means legal tender of the United States of America.

**Cash Consideration** has the meaning set forth in section 6.2 of the Plan.

**Causes of Action** shall have the meaning ascribed to such term in section 11.6 of the Plan.

**Chapter 11 Cases** means the above-captioned jointly administered chapter 11 bankruptcy cases of the Debtors.

**Claim** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

**Class** means any group of Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

2

***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

***Debtor*** means any one of the Debtors, as the context may require.

***Debtors*** means 2002B, and 2002C, together, in their capacities as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

***Direct Claim Settlement Payments*** means the 2002B Direct Claim Settlement Payment and the 2002C Direct Claim Settlement Payment, together.

***Disallowed Claim or Equity Interest*** means any Claim or Equity Interest, or portion thereof, that is not an Allowed Claim, an Allowed Equity Interest, or a Disputed Claim or Disputed Equity Interest.

***Disbursing Agent*** means the Responsible Party, or any other party designated by the Bankruptcy Court, upon motion by the Debtors, to serve as a disbursing agent pursuant section 7.3 of the Plan.

***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

***Disputed Claim*** means, with respect to a Claim, any such Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtors or any party in interest have interposed a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

***Disputed Equity Interest*** means, with respect to an Equity Interest, any such Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Objection Deadline in accordance with the Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

***Distribution Date*** means the date, occurring on or as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.

3

***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be the Confirmation Date.

***Effective Date*** means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in section 10.2 hereof shall have been satisfied or waived as provided in section 10.3 hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

***Equity Interest*** means any "equity security" of the Debtors, as that term is defined in section 101(16) of the Bankruptcy Code.

***Estate*** means either of the Debtor's Estates as the context may require.

***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

***Fee Claim*** means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Cases.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***General Unsecured Claim*** means any Claim against a Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim or an Equity Interest.

***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

***Initial Distribution*** means the amount of Cash to be distributed to holders of Allowed Equity Interests on the Effective Date of the Plan, after payment of Allowed Claims subject to any limitations set forth in the Plan.

4

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Limited Partnership Agreement* means, with respect to each Debtor, the limited partnership agreement among such Debtor's general and limited partners.

*Local Rules* means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.

*Objection Deadline* means the later of (a) ninety (90) days after the Effective Date and (b) such later as may be ordered by the Bankruptcy Court prior to the expiration of such ninety (90) day period, upon motion.

*Oil and Gas Contracts* means all of the interests, rights, claims, and benefits arising or accruing to either of the Debtors under any contract (including any lease) to which a Debtor is a party or has or may acquire a benefit and that relate to the Oil and Gas Interests.

*Oil and Gas Interests* means all of the Debtors' right, title, and interest in and to all of Debtors' oil and gas properties, including any leases, wells or other real or personal property associated with the operation of such leases and wells.

*PDC* means PDC Energy, Inc. (f/k/a Petroleum Development Corporation) in its capacity as general managing partner for each Debtor.

*Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

*Petition Date* means September 24, 2016, the date on which each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

*Plan* means this Chapter 11 Plan proposed by the Debtors, as the same may be amended, supplemented or otherwise modified, including any exhibits and schedules hereto.

*Post-Confirmation Debtors* means the Debtors, from and after the Confirmation Date.

*Priority Non-Tax Claim* means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

*Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Professional Person* means any Person retained or to be compensated by the Debtors pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

*Pro Rata* means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Claims or Equity Interests (but excluding Disallowed Claims and Equity Interests) in such Class.

*Purchased Assets* means all of the Debtors' right, title, and interest in and to all of the property, including but not limited to the Oil and Gas Interests and Oil and Gas Contracts.

*Responsible Party* means Karen Nicolaou, the Debtors' duly appointed responsible party in the Chapter 11 Cases.

*Schedules and Statement* means, collectively, the schedules of assets and liabilities and the statement of financial affairs, as filed by each of the Debtors in the Chapter 11 Cases, as the same may be amended from time to time.

*Secured Claim* means a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the holder of such Claim.

*Voting Deadline* means the date set by the Bankruptcy Court by which ballots for accepting or rejecting the Plan must be received, which is May 2, 2017.

**1.2** *Rules of Interpretation and Construction*.

(a) <u>Interpretation</u>. Unless otherwise specified herein, all section, article and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b) <u>Construction and Application of Bankruptcy Code Definitions</u>. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined the Plan shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c) <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan.

(d) <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3916682.1

# ARTICLE II

# TREATMENT OF UNCLASSIFIED CLAIMS

**2.1** *Administrative Expense Claims.*

All Administrative Expense Claims against the Debtors shall be treated as follows:

(a) <u>Time for Filing</u>. All holders of Administrative Expense Claims, other than Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtors, their counsel, and counsel to PDC, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtors or the Post-Confirmation Debtors.

(b) <u>Allowance</u>. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is twenty-four (24) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c) <u>Payment</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) fourteen (14) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim.

**2.2** *Fee Claims.*

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtors. Allowed Fee Claims shall be paid in full in Cash by the Debtors on (or as soon as reasonably practicable after) the later of (A) the

Effective Date or (B) fourteen (14) days after entry of an order by the Bankruptcy Court allowing such Fee Claim.

### 2.3 *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, at the Debtor's option: (i) Cash in an amount equal to the Allowed amount of such Claim, or (ii) regular installment payments of Cash (a) having a total value, as of the Effective Date, equal to the Allowed amount of the Claim, (b) over a period ending not later than five (5) years after the Petition Date and (c) in a manner not less favorable than the most favored nonpriority Allowed General Unsecured Claims provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code). To the extent interest is required to be paid on any Priority Tax Claim, the rate of such interest shall be the rate determined under applicable nonbankruptcy law, as set forth in section 511 of the Bankruptcy Code. To the extent the holder of an Allowed Priority Tax Claim has a Lien on a Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full. On and after the Effective Date, all *ad valorem* property taxes (if any) will be paid as they become due, in the ordinary course.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtors are classified for all purposes, including voting, confirmation, and distribution, pursuant to the Plan as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1A | Priority Non-Tax Claims Against Colorado 2002B Limited Partnership | No | No (deemed to accept) |
| Class 1B | Priority Non-Tax Claims Against Colorado 2002C Limited Partnership | No | No (deemed to accept) |
| Class 2A | Secured Claims Against Colorado 2002B Limited Partnership | No | No (deemed to accept) |
| Class 2B | Secured Claims Against Colorado 2002C Limited Partnership | No | No (deemed to accept) |
| Class 3A | General Unsecured Claims Against Colorado 2002B Limited Partnership | No | No (deemed to accept) |
| Class 3B | General Unsecured Claims Against Colorado 2002C Limited Partnership | No | No (deemed to accept) |

3916682.1

| Class 4A | Equity Interests in Colorado 2002B Limited Partnership | Yes | Yes |
| Class 4B | Equity Interests in Colorado 2002C Limited Partnership | Yes | Yes |

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.  Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of the Plan.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**     *Class 1 – Priority Non-Tax Claims*.

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against a Debtor agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in Cash from the applicable Debtor on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) fourteen (14) days after such Priority Non-Tax Claim becomes Allowed.

**4.2**     *Classes 2A and 2B – Secured Claims*.

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a holder of an Allowed Secured Claim against a Debtor agrees to less favorable treatment, each holder of an Allowed Secured Claim shall, at the Debtors' option, receive one of the following treatments: (i) payment in full in Cash from the applicable Debtor; (ii) the Collateral securing such Allowed Secured Claim; or (iii) other treatment that renders such Allowed Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

**4.3**     *Class 3 – General Unsecured Claims*.

Except to the extent that a holder of an Allowed General Unsecured Claim against a Debtor agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall be paid in full in Cash from the applicable Debtor on (or as soon as reasonably practicable after) the later of (a) the Effective Date or (b) fourteen (14) days after such General Unsecured Claim become Allowed.

**4.4**     *Classes 4A and 4B – Equity Interests*

Except to the extent that a holder of an Allowed Equity Interest in a Debtor agrees to a different treatment, each holder of an Allowed Equity Interest in a Debtor shall receive, in one or more distributions upon and after the Effective Date, or at such other time set forth in the Plan, its Pro Rata share of any Cash remaining with the applicable Debtor after payment of

9

Allowed Claims in Classes 1, 2, and 3.  The timing of distributions to holders of Allowed Equity Interests shall be as set forth in section 7.1(b) of the Plan.  No portion of the Direct Claim Settlement Payments shall be distributed to PDC.

## ARTICLE V

## IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

**5.1**    *Classes Entitled to Vote*.

The holders of Claims in Classes 1, 2 and 3 are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  The holders of Equity Interests in Class 4 are impaired and entitled to vote to accept or reject the Plan.

**5.2**    *Class Acceptance Requirement*.

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan.  A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

**5.3**    *Cramdown*.

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## MEANS OF IMPLEMENTATION

**6.1**    *General*.

The Plan contemplates that all of the Debtors' Cash on hand, and all Cash received in connection with the settlement set forth in section 6.2, will be paid to the holders of Allowed Claims and Allowed Equity Interests, subject to funding the Administrative Reserve, on the terms set forth in the Plan.  The Initial Distribution will be made on the Effective Date or as soon as reasonable practicable thereafter, and subsequent interim distributions may be made as and when the Responsible Party deems appropriate based on the progress of closing down the Chapter 11 Cases.  After all costs and expenses closing down the Chapter 11 Cases have been paid, a final distribution will be made to holders of Allowed Claims and Allowed Equity Interests.

10

**6.2**     *Managing General Partner Settlement*.

Pursuant to Bankruptcy Rule 9019, the Plan does, and shall, constitute a compromise, settlement and release of all potential claims against PDC as set forth below and which shall become effective on the Effective Date.

(a)     Release of Estate Claims.   In exchange for the consideration set forth in this section 6.2, the Debtors and PDC agree to the following releases: on the Effective Date the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law which they have or may have against any of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys or agents, the Responsible Party, PDC, and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.   On the Effective Date, PDC shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under the Bankruptcy Code or other applicable law which it has or may have against the Responsible Party, the Debtors, and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

(b)     Direct Claim Settlement Payment.   As set forth more fully on the Ballot, all holders of Equity Interests in the Debtors shall be deemed to have consented to the third party release described in section 11.4 of the Plan, regardless of whether a Ballot has been submitted, unless the holder of an Equity Interest has specifically checked the box on the Ballot to opt out of the third party release.   In consideration for the release contemplated by Section 11.4 of the Plan, within five (5) Business Days of the Confirmation Date, PDC shall pay the 2002B Direct Claim Settlement Payment into escrow with 2002B and shall pay the 2002C Direct Claim Settlement Payment into Escrow with 2002C.   On the Effective Date, in full and final satisfaction and release of any and all Causes of Action that could be asserted against PDC by the holder of an Equity Interest in either of the Debtors, the Direct Claim Settlement Payment shall be released from escrow to the Debtors' respective Estates and shall be distributed Pro Rata to the holders of Equity Interests in the Debtors who have not checked the box on the Ballot to opt out of the third party release provided for in section 11.4 of the Plan; *provided, however,* that no portion of the Direct Claim Settlement Payments shall be distributed to PDC.   Any holder of an Equity Interest who has checked the box on the Ballot to opt out of the third party release shall be deemed to have forfeited its right to its share of the Direct Claim Settlement Payments. PDC, together with any Equity Interest holder who opts out of the third party release and forfeits its right to its share of the Direct Claim Settlement Payment, shall have its share of the Direct Claim Settlement Payment reallocated Pro Rata to the other holders of Equity Interests in the applicable Debtor who have not opted out of the third party release.

11

(c)     <u>Purchase of Estate Assets</u>.  PDC shall purchase from the Debtors, and Debtors shall sell to PDC, all of the Purchased Assets.  The Purchased Assets shall be acquired by PDC free and clear of any and all liens, claims and encumbrances.  The consideration to be paid by PDC to the Debtors' Estates for the purchase, sale and assignment of the Purchased Assets is the sum of $38,500.00 (the "<u>Cash Consideration</u>"), with $7,600.00 allocated to the assets purchased from 2002B and $30,900.00 allocated to the assets purchased from 2002C.  PDC agrees to waive any right to recovery on account of its Equity Interest in the Debtors with respect to the Cash Consideration.  In addition to the Cash Consideration, PDC shall assume all liabilities associated with the Purchased Assets, including but not limited, to any and all plugging and abandonment liability and any environmental liability associated with the Purchased Assets (the "<u>Purchased Asset Liabilities</u>" and, together with the Cash Consideration, the "<u>Purchase Price</u>").  On the Effective Date, PDC shall pay via wire to the Debtors' Estates the Cash Consideration, and the Debtors shall execute and deliver to PDC such assignments, bills of sale and other instruments, in form and substance mutually agreed upon by the Debtors and PDC, as may be reasonably requested to convey ownership, title and possession of the Purchased Assets to PDC.  PDC shall be deemed to be a good faith purchaser and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

(d)     <u>Funding of Administrative Costs</u>.  In addition to the other consideration, terms and conditions set forth herein, PDC shall contribute up to $350,000.00 to the Debtors' Estates to fund the Administrative Reserve; *provided, however*, that none of funds contributed pursuant to this section may be used to pay or reimburse fees, costs, expenses incurred in connection with actions that (i) oppose the transactions set forth in this Section 6.2, or (ii) are adverse to or otherwise challenge PDC's legal or equitable rights or interests.  Any balance left in the Administrative Reserve after payment in full of all Allowed Administrative Expense Claims shall be returned to PDC; *provided, however*, that $25,000 of the Administrative Reserve shall remain with the Post-Confirmation Debtors post-Effective Date to cover all costs and expenses associated with winding down the Debtors' estates.

**6.3**     *Release of Liens*.

Except as otherwise provided herein, upon the occurrence of the Effective Date, any Lien securing a Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Responsible Party to evidence the release of such Lien, including the execution, delivery and filing or recording of releases.  As of the Effective Date, the Responsible Party shall be authorized to file on behalf of holders of Secured Claims form UCC-3s or such other forms as may be necessary to implement the provisions of this section of the Plan.

**6.4**     *Cancellation of Limited Partnership Agreements and Equity Interests*.

Upon the Effective Date, each Debtors' Limited Partnership Agreement, and the Equity Interests in each Debtor, shall be of no further force or effect, and the obligations of the Debtors thereunder shall be deemed satisfied in full and discharged; *provided, however*, that such Limited Partnership Agreements and Equity Interests shall continue in effect for the sole purpose of allowing the Debtors to wind-up their respective Estates and implement the terms of the Plan.

12

Upon the Effective Date, Equity Interests in the Debtors shall represent nothing more than an Equity Interest holder's right to a Pro Rata distribution of Cash on hand from the respective Debtor, without any other or further rights of any kind.  Any and all trading in the Debtors' Equity Interests shall cease and desist on the Effective Date, and no further transfers of Equity Interests shall be of any force or effect, nor shall any transfers be recognized by the Debtors or PDC for any purpose.

**6.5**    ***Partnership Actions***.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  All matters provided for in the Plan involving the partnership structure of the Debtors and any partnership action required by the Debtors or PDC in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any holders of Equity Interests, PDC or the Responsible Party. On or (as applicable) prior to the Effective Date, the Responsible Party and PDC, as appropriate and applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, and instruments contemplated by the Plan, and otherwise take any and all such actions necessary or desirable to effect the transactions contemplated by the Plan.  Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

**ARTICLE VII**

**DISTRIBUTIONS**

**7.1**    ***Date of Distributions***.

(a)    <u>General</u>. Unless otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)    <u>Class 4 Equity Interests</u>. The Initial Distribution shall be made by the Disbursing Agent to holders of Allowed Class 4 Equity Interests on the Effective Date (or as soon as practicable thereafter).  Thereafter, additional interim distributions shall be made to holders of Allowed Class 4 Equity Interests, as and when the Responsible Party deems appropriate, on a Pro Rata basis subject to the distribution limitations set forth in section 6.2. After all remaining costs of administration have been reserved for or paid, the Disbursing Agent shall make a final Pro Rata distribution to holders of Allowed Class 4 Equity Interests.  If the final distribution will be in an amount less than $15 to any holder of an Allowed Class 4 Equity Interest, the Disbursing Agent shall donate such sums to the Anthony H. N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, to assist in the provision of resources for research and education.

13

**7.2**     *Sources of Cash for Plan Distributions*.

      Except as otherwise provided in the Plan or in the Confirmation Order, all Cash required for the payments to be made under the Plan shall come from each Debtor's Cash on hand on the Effective Date, and all Cash subsequently received by the Debtors.

**7.3**     *Disbursing Agent*.

      Distributions to be made to holders of Allowed Claims and Allowed Equity Interests shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All further distributions under the Plan after the Initial Distribution shall be made by the Disbursing Agent (upon direction from the Responsible Party, if the Responsible Party is not the Disbursing Agent).

**7.4**     *Rights and Powers of Disbursing Agent*.

      The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated thereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**7.5**     *Record Date for Distributions*.

      At the close of business on the Distribution Record Date, the transfer ledgers or registers for the Debtors' existing Equity Interests shall be closed, and there shall be no further changes in the record holders of such Equity Interests. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Debtors and PDC as of the close of business on the Distribution Record Date.

**7.6**     *Recipients of Distributions*.

      All distributions to holders of Allowed Claims and Allowed Equity Interests under the Plan shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest after the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtors and their counsel.

**7.7**   *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim or Allowed Equity Interest as set forth in the books and records of the Debtors and PDC, unless the applicable Debtor has been notified in writing of a change of address.  If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred twenty (120) days after the date of the distribution in question.  After such 120th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the respective Debtor from which it came and thereafter be distributed Pro Rata to the holders of that Debtor's Allowed Claims and Allowed Equity Interests in accordance with the terms of the Plan, and (ii) the Claim or Equity Interest of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

**7.8**   *Means of Payment*.

All distributions made pursuant to the Plan shall be in Cash.

**7.9**   *Setoffs and Recoupment*.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim or Equity Interest any rights to payment that any of the Debtors may have against the holder of such Claim or Equity Interest. Neither the failure of the Debtors to setoff or recoup, nor the Allowance of any Claim or Equity Interest shall constitute a waiver or release by any of the Debtors of any right to payment, or right of setoff or recoupment.

**7.10**   *Administrative Reserve*.

On the Effective Date, the Debtors shall establish the Administrative Reserve. Any amounts remaining in the Administrative Reserve after payment of Allowed Administrative Expense Claims shall be returned to PDC; *provided, however*, that $25,000 of the Administrative Reserve shall remain with the Post-Confirmation Debtors post-Effective Date to cover all costs and expenses associated with winding down the Debtors' estates.

**7.11**   *Distributions After Effective Date*.

Distributions made pursuant to the Plan after the Effective Date to holders of Disputed Claims and Disputed Equity Interests that are not Allowed as of the Effective Date, shall be deemed to have been made on the Effective Date.  After the Initial Distribution, the Responsible Party (or the Disbursing Agent, upon direction from the Responsible Party if the Responsible Party is not the Disbursing Agent) shall make additional interim distributions to

15

holders of Allowed Equity Interests at such time as the Responsible Party may deem appropriate, in accordance with the terms of the Plan.

**7.12** *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued under the Plan, any party issuing any instrument or making any such distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**7.13** *No Postpetition Interest.*

Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interests, and no holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date.

**7.14** *Time Bar to Payments.*

Checks issued by the Disbursing Agent under the Plan shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance. Requests for reissuance of any check shall be made in writing directly to the Disbursing Agent by the person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 120-day period referenced in this section 7.14. After such 120-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with section 7.7 of the Plan, and all Claims or Equity Interests in respect of such void checks shall be discharged and forever barred.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1** *Objections to Claims.*

Except insofar as a Claim or Equity Interest is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Debtors, or any other party in interest, shall be entitled to object to Claims and Equity Interests. Any objections to Claims and Equity Interests

16

shall be served and filed by the Objection Deadline. Any Claim or Equity Interest as to which an objection is timely filed shall be a Disputed Claim or Disputed Equity Interest, respectively.

**8.2** *No Distributions Pending Allowance.*

If a timely objection is made with respect to any Claim or Equity Interest, no payment or distribution under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes Allowed.

**8.3** *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest.

**8.4** *Proof of Equity Interest.*

Holders of Equity Interests need not, and are not required to, file proof of such interests in order to receive a distribution under the Plan.

## ARTICLE IX

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**9.1** *Rejection of Contracts and Leases.*

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

**9.2** *Inclusiveness.*

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements

17

made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease.

**9.3**     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the applicable Debtor and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

**ARTICLE X**

**CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN**

**10.1**     *Conditions to Confirmation of Plan.*

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)     An order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and

(b)     The Confirmation Order shall be in a form and substance satisfactory to the Debtors and PDC.

**10.2**     *Conditions to Effective Date of Plan.*

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(a)     The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

(b)     The Direct Claim Settlement Payments and the Cash Consideration shall have been placed into escrow with the Debtors; and

(c)     All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

**10.3**     *Waiver of Conditions Precedent.*

Any of the foregoing conditions (with the exception of the conditions set forth in sections 10.1(b) and 10.2(a)) may be waived by agreement of the Debtors and PDC without

18

notice to or order of the Bankruptcy Court.  The failure to satisfy or waive any condition may be asserted by the Debtors and PDC regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors and PDC).  The failure of the Debtors and PDC to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

**10.4    *Effect of Failure of Conditions.***

If the foregoing conditions have not been satisfied or waived in the manner provided in sections 10.2 and 10.3 hereof within ninety (90) days of entry of the Confirmation Order, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (vi) the Plan shall be deemed withdrawn.  Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the limited service list maintained in the Chapter 11 Cases.

**10.5    *Reservation of Rights.***

The Plan shall have no force or effect unless and until the Effective Date occurs.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors or PDC with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors, PDC or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI

## EFFECT OF CONSUMMATION

**11.1    *Revesting of Assets.***

Upon the Confirmation Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates, including Causes of Action, shall vest in the Post-Confirmation Debtors, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise provided in the Plan.

**11.2    *Exculpation.***

Neither the Debtors, the Disbursing Agent, the Responsible Party, PDC, nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors,

19

successors or assigns, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, this section 11.2 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

**11.3    *Releases by the Debtors*.**

On the Effective Date, effective as of the Confirmation Date, the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under Chapter 5 of the Bankruptcy Code or other applicable law which they have or may have against any of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys or agents, the Responsible Party, PDC, and each of their respective members, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

**11.4    *Third Party Release*.**

*Upon the Effective Date, except as otherwise provided in the Plan and except for the right to enforce the Plan, all Persons who are entitled, directly or indirectly, to receive a distribution under the Plan, and who have not specifically opted out of this release on the Ballot, shall be deemed to forever release, waive and discharge the Debtors, the Post-Confirmation Debtors, the Responsible Party, PDC, and each of their respective constituents, principals, officers, directors, employees, members, managers, partners, affiliates, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors, and assigns of and from any and all Liens, Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, liabilities, encumbrances, security interests, Equity Interests or charges of any nature or description whatsoever relating to the Debtors, the Chapter 11 Cases or affecting property of the Debtors' Estates, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above, whether at law, in equity or otherwise, based upon any condition, event, act, omission, occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way arising out of, relating to or connected with the*

20

*operation of the Debtors' businesses or the Chapter 11 Cases, all regardless of whether (a) a proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan, except for willful misconduct or gross negligence.*

**11.5    *Injunction and Stay.***

(a)    *Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Post-Confirmation Debtor or other entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Post-Confirmation Debtor with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Post-Confirmation Debtor, or against the property or interests in property of any Post-Confirmation Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Post-Confirmation Debtor, or against the property or interests in property of any Post-Confirmation Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.4 hereof.*

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.6    *Preservation of Claims.***

Except as otherwise provided in sections 11.3, 11.4 and 11.5 of the Plan, as of the Confirmation Date, pursuant to sections 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall constitute assets of the Post-Confirmation Debtors and shall vest in the Post-Confirmation Debtors. Thereafter, the Responsible Party, on behalf of the Post-Confirmation Debtors, and as a representative of the Debtors and the Post-Confirmation Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have the authority to commence and prosecute Causes of Action for the benefit of the holders of Allowed Equity Interests. Neither the Post-Confirmation Debtors nor the Responsible Party intend to pursue any such Causes of Action after the Effective Date, and neither the Post-Confirmation Debtors nor the Responsible Party shall be liable to any party as a result thereof.

**11.7    *Compromise of Controversies.***

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute

21

the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Debtors under section 11.6 of the Plan;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement execute and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

22

(j)      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)      To hear any other matter not inconsistent with the Bankruptcy Code;

(l)      To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted under sections 11.2, 11.3 and 11.4 hereof;

(m)      To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(n)      To enter a final decree(s) closing the Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS

**13.1     *Payment of Statutory Fees.***

All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as appropriate.

**13.2     *Filing of Additional Documents.***

The Debtors may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.3     *Schedules, Exhibits and Plan Supplement Incorporated.***

All exhibits and schedules to the Plan, and the documents contained in the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

**13.4     *Amendment or Modification of the Plan.***

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors, with the agreement of PDC to the extent such modification affects PDC, at any time prior to or after the Confirmation Date. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

23

**13.5**   *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**13.6**   *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.  All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**13.7**   *Expedited Tax Determination.*

The Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

**13.8**   *Ordinary Course.*

From and after the Confirmation Date, the Responsible Party, on behalf of the Post-Confirmation Debtors, is authorized to and may enter into all transactions including, but not limited to, the retention of professionals, and pay and fees and expenses incurred thereby and in connection therewith, in the ordinary course of business, without the need for Bankruptcy Court approval.

**13.9    *Binding Effect.***

  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**13.10    *Severability.***

  If the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may modify the Plan in accordance with section 13.4 hereof so that such provision shall not be applicable to the holder of any Claim or Equity Interest.  Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of the Plan; or (ii) require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

**13.11    *No Admissions.***

  If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, any Debtor, (b) prejudice in any manner the rights of any Debtor or any other party in interest, or (c) constitute an admission of any sort by any Debtor or other party in interest.

**13.12    *No Payment of Attorneys' Fees.***

  Except for the fees of Professional Persons and the Responsible Party, no attorneys' fees shall be paid by the Debtors with respect to any Claim or Equity Interest unless otherwise specified in the Plan or a Final Order of the Bankruptcy Court.

**13.13    *Notices.***

  All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

ATROPOS INCORPORATED
Attention:  Karen Nicolaou
Responsible Party for Debtors
569 Trianon Street
Houston, Texas 77024
Telephone:  (713) 805-2343
Email: knicolaou@atropos-inc.com

with a copy to:

GRAY REED & McGRAW LLP
Attention: Jason S. Brookner
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-3132
Email: jbrookner@grayreed.com


**13.14   *Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

*[remainder of page intentionally left blank]*

3916682.1

Dated:  March 31, 2017
       Dallas, Texas

**COLORADO 2002B LIMITED PARTNERSHIP**

By:     */s/ Karen Nicolaou*
       ATROPOS INCORPORATED,
       Responsible Party, by
       Karen Nicolaou, its Principal

**COLORADO 2002C LIMITED PARTNERSHIP**

By:     */s/ Karen Nicolaou*
       ATROPOS INCORPORATED,
       Responsible Party, by
       Karen Nicolaou, its Principal

**GRAY REED & McGRAW LLP**
Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:   (214) 953-1332

**ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

3916682.1